# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

AF HOLDINGS LLC,

      Plaintiff,

v.

JOHN DOE,

      Defendant.

CASE NO. 12-cv-1449

Judge: Hon. Joan N. Ericksen

Magistrate Judge: Hon. Franklin L. Noel

---

## PLAINTIFF AF HOLDINGS LLC'S RESPONSE
## TO THE MAGISTRATE JUDGE'S ORDER TO SHOW CAUSE

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 1

I.     Plaintiff's Points of Clarification to the Magistrate Judge's Summary
of the Los Angeles Order to Show Cause Proceedings ............................. 1

II.    Plaintiff's Experience in the Los Angeles Order to Show Cause
Proceedings ............................................................................................... 4

III.   The Los Angeles Court's Failure to Observe Essential Procedures
Resulted in Untenable Findings ................................................................ 6

IV.   The Los Angeles Court's Actual Findings of Misconduct ........................ 8

LEGAL STANDARD ......................................................................................... 8

ARGUMENT ..................................................................................................... 10

I.     The Requirements of Fairness and Economy are not Satisfied .............. 10

    A.   Decisions in Plaintiff's Favor Make Issue Preclusion
       Inappropriate ................................................................................ 10

    B.   Non-Mutual Offensive Issue Preclusion Would not Promote
       Judicial Economy and Would Greatly Prejudice Plaintiff ......... 12

II.    The Standard Requirements of Issue Preclusion are not Satisfied ........ 16

    A.   The Los Angeles Court's Findings are not Identical to the
       Issues in These Cases ................................................................. 16

        1.   The Los Angeles Court's Findings Were Made Against
           the so-Called "Principals", not Plaintiff ........................... 16

        2.   The Los Angeles Court's Findings are not Relevant to
           the Issues in This Case ..................................................... 17

    B.   The Los Angeles Court's Findings did not Arise from a Final
       Judgment on the Merits ............................................................... 18

    C.   Plaintiff was not a Party to the Alan Cooper Adjudication ........ 18

i

D.   Plaintiff was Not Given Any Opportunity to be Heard on any Adjudicated Issue, Much Less a "Full and Fair Opportunity"....................19

    1.   Plaintiff's Assignments Were Never the Subject of an Order to Show Cause........................................................................19

    2.   Plaintiff was Never Given an Opportunity to Cross-Examine Witnesses .........................................................................20

    3.   Plaintiff was not Allowed to Present Evidence................................21

E.   The Los Angeles Court's Findings Were not Necessary to the Order Issuing Sanctions................................................................................21

III.   Other Barriers to Issue Preclusion .........................................................................23

A.   The Order to Show Cause Does Not Establish a *Prima Facie* Case in Favor of Issue Preclusion ................................................................23

B.   New Evidence That Has Emerged Since the April 2, 2013, Order to Show Cause Undermines Confidence in the Los Angeles Court's Findings..........................................................................24

CONCLUSION ...........................................................................................................26

# TABLE OF AUTHORITIES

CASES

*AF Holdings v. Harris*,
No. 2:12-cv-2144-PHX-GMS (D. Az. filed Oct. 9, 2012) ........................................ 11

*AF Holdings v. Doe*,
No. 2:12-cv-6636-ODW(JCx)
(C.D. Cal. filed August 1, 2012) ............................................................................ 4, 5

*Bechtold v. City of Rosemount*,
104 F.3d 1062 (8th Cir. 1997) ...................................................... 10, 18, 19

*Bobby v. Bies*,
129 S. Ct. 2145 (2009) ................................................................................. 10

*Carey v. Piphus*,
435 U.S. 247 (1978) .................................................................................... 20

*Comes v. Microsoft Corp.*,
709 N.W.2d 114 (Iowa 2006) ..................................................................... 22

*Cooter & Gell v. Hartmarx Corp.*,
496 U.S. 384 (1990) .................................................................................... 18

*Corburn v. Smithkline Beecham Corp.*,
174 F. Supp. 2d 1235 (D. Utah 2001) ........................................................ 13

*Faigin v. Kelly*,
184 F.3d 67 (1st Cir. 1999) ........................................................................ 16

*Gordon v. Microsoft Corp.*,
2003 WL 22281574 (Minn. Dist. Ct. 2003) .............................................. 22

*Gough v. Natural Gas Pipeline Co. of Am.*,
996 F.2d 763 (5th Cir. 1993) ....................................................................... 9

*Griffin v. California*,
380 U.S. 609 (1965) ...................................................................................... 4

*Grubbs v. United Mine Workers of America*,
723 F. Supp. 123 (W.D. Ark. 1989) ............................................................ 9

*Harrison v. Celotex Corp.*,
  583 F. Supp. 1497 (E.D. Tenn. 1984) ........................................................................ 11

*Held v. Mitsubishi Aircraft Int'l, Inc.*,
  672 F. Supp. 369 (D. Minn. 1987) ........................................................................ 9, 12

*In re Bendectin Prods. Liab. Litig.*,
  749 F.2d 300 (6th Cir. 1984) ................................................................................ 10

*In re Microsoft Corp. Antitrsut Litig.*,
  232 F. Supp. 2d 534 (D. Md. 2002),
  *rev'd on other grounds*, 355 F.3d 322 (4th Cir. 2004) ............................................... 24

*In re Microsoft Corp. Antitrust Litig.*,
  355 F.3d 322 (4th Cir. 2004) ................................................................................ 10

*In re Southmark Corp.*,
  163 F.3d 925 (5th Cir. 1999) ................................................................................ 16

*Ingenuity 13 LLC v. Doe*,
  No. 2:12:-cv-8333-ODW(JCx)
  (C.D. Cal. filed Sept. 27, 2012) ....................................................................... passim

*Jack Faucett Assocs., Inc. v. AT&T Co.*,
  744 F.2d 118 (D.C. Cir. 1984) ................................................................. 9, 10, 11, 17

*Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*,
  458 F.3d 244 (3rd Cir. 2006) .................................................................................. 9

*Martin v. Malhoyt*,
  830 F.2d 237 (D.C. Cir. 1987) ............................................................................... 18

*Montana v. U.S.*,
  440 U.S. 147 (1979) .............................................................................................. 24

*Parklane Hosiery Co. v. Shore*,
  439 U.S. 322 (1979) .................................................................................... 9, 10, 12

*Pool Water Prods. v. Olin Corp.*,
  258 F.3d 1024 (9th Cir. 2001) ............................................................................... 22

*Rogers v. Ford Motor Co.*,
  925 F. Supp. 1413 (N.D. Ind. 1996) ....................................................................... 25

iv

*S.E.C. v. Monarch Funding Corp.*,
192 F.3d 295 (2d Cir. 1999) ..................................................................... 9

*S.E.C. v. Ridenour*,
913 F.2d 515 (8th Cir. 1990) ................................................................... 21

*Setter v. AH Robins Co., Inc.*,
748 F.2d 1328 (8th Cir. 1984) ............................................................ 10, 21

*Slochower v. Board of Higher Education*,
350 U.S. 551 (1956) .................................................................................. 4

*Smith v. Commonwealth*,
282 S.W.2d. 618 (Ky. 1955) .................................................................... 15

*State v. Talbot*,
198 A.2d 163 (Me. 1964) ......................................................................... 15

*Taylor v. Sturgell*,
128 S. Ct. 2161 (2008) ......................................................................... 8, 23

*U.S. v. Peterson*,
808 F.2d 969 (2d Cir. 1987) .................................................................... 14

*Ullmann v. United States*,
350 U.S. 422 (1956) .................................................................................. 4

*United States v. Alaska*,
521 U.S. 1 (1997) .................................................................................... 21

*Vincent v. Thompson*,
50 A.D.2d 211 (N.J. App. Div. 1975) ...................................................... 24

*Visa U.S.A. Inc. v. First Data Corp.*,
369 F. Supp. 2d 1121 (N.D. Cal. 2005) .............................................. 16, 17

## FEDERAL RULES

Fed. R. Civ. P. 11 ...................................................................................... 5

Fed. R. Civ. P. 4 ........................................................................................ 4

Fed. R. Civ. P. 41 ...................................................................................... 4

Fed. R. Civ. P. 8 ...................................................................................... 23

**OTHER AUTHORITIES**

18A Wright, Miller, & Cooper, *Federal Practice &*
  *Procedure* § 4465 (2009) ...................................................................................... 12, 13

Restatement (Second) of Judgments § 29 (1982) ............................................................ 12

## INTRODUCTION

The Magistrate Judge ordered Plaintiff to show cause, "why Judge Wright's factual findings are not binding against it under the common law doctrine of issue preclusion." (ECF No. 34 at 4.)[1] For the reasons stated herein, issue preclusion is not appropriate in this case.

## BACKGROUND

### I.   Plaintiff's Points of Clarification to the Magistrate Judge's Summary of the Los Angeles Order to Show Cause Proceedings

*The misappropriation of Alan Cooper's identity was one of the subjects of the first show-cause hearing.  (ECF No. 33 at 4.)*

The only Alan Cooper issue subject to any show cause order was: "In *Ingenuity 13 LLC v. Doe*, No. 2:12:-cv-8333-ODW(JCx) (C.D. Cal. filed Sept. 27, 2012), perpetrating fraud on the Court by misappropriating the identity of Alan Cooper and filing lawsuits based on an invalid copyright assignment." *Ingenuity 13 LLC v. Doe*, No. 2:12-cv-8333, ECF No. 48 at 10 (C.D. Cal. Feb. 7, 2013). The validity of Plaintiffs' assignments was never a subject of an order to show cause issued by the Los Angeles court. Nor was Plaintiffs' alleged "misappropriation of Alan Cooper's identity."

---

[1] The Magistrate Judge issued identical orders in five cases. *See AF Holdings LLC v. John Doe*, 12-cv-1445, ECF No. 34 (D. Minn. Aug. 19, 2013); *AF Holdings LLC v. John Doe*, 12-cv-1446, ECF No. 30 (D. Minn. Aug. 19, 2013); *AF Holdings LLC v. John Doe*, 12-cv-1447, ECF No. 40 (D. Minn. Aug. 19, 2013); *AF Holdings LLC v. John Doe*, 12-cv-1448, ECF No. 33 (D. Minn. Aug. 19, 2013); *AF Holdings LLC v. John Doe*, 12-cv-1449, ECF No. 53 (D. Minn. Aug. 19, 2013). Plaintiff's docket cites in this memorandum are keyed to the filings in 12-cv-1445.

> *Judge Wright ordered Alan Cooper and the so-called Principals to appear in person at the hearing. Alan Cooper appeared. The Principals did not.*

The Los Angeles court did not order anyone—other than Brett Gibbs—to appear in person at the March 11, 2013, hearing. *Compare id.* at ECF No. 57 ("Further, Mr. Gibbs is reminded to appear in person at the March 11, 2013 hearing.") *with id.* at ECF No. 66 (ordering certain persons to appear as witnesses, but not stating that an "in-person" appearance was required).[2] Further, the so-called "Principals" did appear at the hearing, both via telephone and through counsel.

> *At the first hearing, Alan Cooper testified that he did not sign the copyright assignment agreements for Popular Demand and Sexual Obsession. It appears that Ms. Rosing elected not to cross-examine Mr. Cooper regarding these assertions.*

It is not true that Ms. Rosing declined to cross-examine Mr. Cooper. The transcript of the March 11, 2013, hearing makes clear that the Los Angeles court did not permit Ms. Rosing to participate in the hearing:

| | |
|---|---|
| THE COURT: | Are they here? |
| MS. ROSING: | No, your Honor |
| THE COURT: | Have a seat. |

---

[2] The Los Angeles court's order provided the summoned witnesses with a single business day's notice to appear cross-country at the March 11, 2013, hearing. *See id.* at 66 ("Brett L. Gibbs is hereby **ORDERED** to serve a copy of this order on the persons in subparagraphs a–g above by March 7, 2013.") (emphasis in original). While Alan Cooper's professional obligations did not prevent him from flying from Minnesota to Los Angeles on such short notice, the so-called "Principals" were not similarly positioned. In addition, Alan Cooper's travel expenses (as well as those of his attorney, Paul Godfread) were reimbursed. *See id.* at ECF No. 102-1 (seeking reimbursement for $857.20 in costs for, "Southwest Airlines for round-trip travel by Paul Godfread and Alan Cooper from MSP to LAX on March 10-11, 2013…."). No similar accommodation was offered to any other summoned person. *See id.*

MS. ROSING:          May I just finish?

THE COURT:          Have a seat.

*Id.* at ECF No. 93, 6:24-7:3. Further, the only person subject to the Court's order to show

cause was Mr. Gibbs. *Id.* at ECF No. 48. Every other person was summoned as a witness.

*Id.* at ECF No. 66. Witnesses have no inalienable right to cross-examine one another.

> *After the hearing, Judge Wright ordered the Principals to appear at a second show-cause hearing. He also included the Principals' relationship with the plaintiff as one of the subjects of the show-cause hearing.*

The precise order to show cause that was issued with respect to the so-called

"Principals" was why they and ten other persons, including paralegals and technicians,

"should not be sanctioned for defrauding the Court by misrepresenting the nature and

relationship of [thirteen separate persons]." *Id.* at ECF No. 86. The Los Angeles court's

order issuing sanctions did not sanction the principals for misrepresenting the nature and

relationship of any person. *See id.* at ECF No. 130.

> *The plaintiff and the Principals all appeared at the second hearing, but the Principals refused to testify—citing their Fifth Amendment privilege against self-incrimination.*

The key point made here is that neither Plaintiff nor its manager invoked the Fifth

Amendment privilege against compelled testimony. Despite summoning Plaintiff's

manager, Mr. Lutz, cross-country to Los Angeles, California, the Los Angeles judge did

not ask him any questions or otherwise acknowledge his presence. The April 2, 2013,

hearing lasted an estimated 12 mintues.

Further, the Magistrate Judge should not imply wrongdoing from anyone's

invocation of the Fifth Amendment privilege against compelled testimony. *Griffin v.*

3

*California*, 380 U.S. 609 (1965). "Too many, even those who should be better advised, view this privilege as a shelter for wrongdoers. They too readily assume that those who invoke it are either guilty of crime or commit perjury in claiming the privilege." *Ullmann v. United States*, 350 U.S. 422, 426 (1956). Rather, "[t]he privilege serves to protect the innocent who otherwise might be ensnared by ambiguous circumstances." *Slochower v. Board of Higher Education*, 350 U.S. 551, 557, 558 (1956); *accord Griffin*, 380 U.S. at 613. Any implication of wrongdoing would be counter to the Supreme Court's express instructions. This is particularly true where, as here, the invocation of the privilege was made, *inter alia*, to avoid violating the attorney-client privilege. *See Ingenuity 13, LLC* at ECF No. 103, 7:16-18.

## II.    Plaintiff's Experience in the Los Angeles Order to Show Cause Proceedings

The Magistrate Judge's description of the Los Angeles order to show cause proceedings focused on the experiences of the so-called "Principals." (*See* ECF No. 34 at 3-4.) However, it did not address Plaintiff's experience. *Id.* Because the Magistrate Judge's order to show cause seeks to bind Plaintiff to the Los Angeles court's findings, Plaintiff's experience must be considered.

Plaintiff was a party to several cases that were filed in the U.S. District Court for the Central District of California, and later reassigned to a single district judge. *E.g.*, *AF Holdings v. Doe*, No. 2:12-cv-6636-ODW(JCx) (C.D. Cal. filed August 1, 2012). As is relevant here, each of these cases was dismissed pursuant to Federal Rule of Civil Procedure 41(a)(1) or 4(m). *See, e.g., id.* at ECF No. 21. On February 7, 2013, after each of Plaintiff's cases was dismissed, the Los Angeles court issued an order to show cause

pursuant to Federal Rule of Civil Procedure 11 against Plaintiff's sole counsel of record, Brett Gibbs. *See, e.g., id.* at ECF No. 23. The order to show cause specifically excluded Plaintiff as a respondent. *See id.* at 10. The two Rule 11 violations relating to Mr. Gibbs' representation of Plaintiff were:

- In *AF Holdings LLC v. Doe*, No. 2:12-cv-6636-ODW(JCx) (C.D. Cal. filed Aug. 1, 2012), violating the Court's October 19, 2012 Order instructing AF Holdings to cease its discovery efforts based on information obtained through any earlier-issued subpoenas; and

- In *AF Holdings LLC v. Doe*, No. 2:12-cv-6669-ODW(JCx) (C.D. Cal. filed Aug. 2, 2012), violating the Court's October 19, 2012 Order instructing AF Holdings to cease its discovery efforts based on information obtained through any earlier-issued subpoenas.

*Id.* at 9-10. The Los Angeles court did *not* issue an order to show cause regarding Plaintiff's copyright assignments. *Id.*

On February 9, 2013, Plaintiff's attorney, Brett Gibbs, submitted a response to the order to show cause through his counsel. *See Ingenuity 13 LLC* at ECF No. 49. On February 27, 2013, the Los Angeles court ordered Mr. Gibbs to identify various individuals alluded to in Mr. Gibbs' response. *See id.* at ECF No. 57. Mr. Gibbs responded on March 1, 2013, naming Mr. Lutz as the "CEO of AF Holdings." *Id.* at 58. On March 5, 2013, the Los Angeles court ordered eight individuals—including Plaintiff's manager, Mark Lutz—to appear from across the United States at the March 11, 2013, hearing, and ordered Mr. Gibbs to serve a copy of the orders on the summoned individuals by March 7, 2013. *Id.* at 66. The order gave the summoned individuals a single business days' notice to make arrangements to appear at the hearing. Mr. Lutz

appeared via telephone at the hearing, but was not asked any questions, given an opportunity to cross-examine witnesses (including Mr. Cooper) or allowed to present evidence. *See generally id.* at ECF No. 93.

On March 14, 2013, the Los Angeles court issued a second order to show cause. *See id.* at 86. This time, the order to show cause was issued against thirteen different persons, including Plaintiff and Mr. Lutz. The order to show cause did not challenge Plaintiff's assignments. *See id.* Plaintiff, through its manager Mr. Lutz, appeared in person at the April 2, 2013, hearing. At the hearing, the Los Angeles court rejected several attempts by respondents to present arguments. *See id.* at ECF No. 103. Instead, the Los Angeles court abruptly ended the hearing when Messrs. Duffy, Steele and Hansmeier invoked the Fifth Amendment privilege against compelled testimony in order, *inter alia*, to avoid violating the attorney client privilege. *See id.* Neither Plaintiff nor Mr. Lutz was given an opportunity to answer questions or present evidence. *See id.* Mr. Cooper did not appear at the April 2, 2013 hearing. *See id.* The hearing lasted an estimated twelve minutes.

**III.    The Los Angeles Court's Failure to Observe Essential Procedures Resulted in Untenable Findings**

The defining feature of the Los Angeles order to show cause proceedings was the failure to observe the Federal Rules of Civil Procedure the Federal Rules of Evidence and the requirements of Due Process. Examples abound, but the Los Angeles court's statements, "*Unfortunately*, other than these specific instances of fraud, the Court cannot make more detailed findings of fraud," and, "this punitive portion is calculated to be *just*

*below the cost of an effective appeal*," strongly suggest that the Los Angeles proceedings were not fair and impartial. *See id.* ECF No. 130 (emphasis added).

The Los Angeles court's failure to observe essential procedures resulted in findings that are untenable. Plaintiff will highlight a few examples, although virtually every one of the findings in the Los Angeles court's order issuing sanctions is suspect:

| <u>Finding</u> | <u>Evidence</u> |
|---|---|
| "The Principals started their copyright-enforcement crusade in about 2010, through Prenda Law…" *Id.* at ECF No. 130, 4:8-9. | Prenda Law, Inc. was incorporated on November 7, 2011. *See* www.ilsos.gov, click the "Business" tab, click Corporation/LLC Search, and enter search term, "Prenda Law, Inc." (last visited August 24, 2013). |
| The Principals held out Alan Cooper as an officer of AF Holdings. *Id.* at 5:11-12. | The Los Angeles court did not identify a document in which Mr. Cooper was held out as Plaintiff's officer. |
| "These settlement funds resided in the Principals' accounts…." *Id.* at 4:19-20. | *See* ECF No. 15 in 12-cv-1445 at fn. 1 ("The 'confidential release and settlement agreement', filed under seal, required the defendant to send a settlement check to Prenda Law, Inc."). |
| "As evidence materialized, it turned out that Gibbs was just a redshirt." *Id.* at 2:15-16. | MEMBER OF THE AUDIENCE:[3] "I had a conversation with Gibbs probably back in October regarding AF Holdings where he told me that he was national counsel for AF Holdings and that any settlement negotiations were to be made through him. And the local counsel for that case confirmed that he was the one who told me to contact Mr. Gibbs. |

---

[3] The Los Angeles court allowed people in the public gallery to offer testimony during the March 11, 2013, order to show cause hearing, but did not afford Plaintiff the same consideration.

7

The Los Angeles court's findings were not based on evidence, but instead were based on conjecture. *See id.* at ECF No. 103, 8:23-9:1 ("Let's cut to the chase. I am really not interested in – I want to know if some of my conjecture is accurate. *The only way I can find out* is to have the principles [sic] here and answer those questions.") (emphasis added).

## IV.   The Los Angeles Court's Actual Findings of Misconduct

Despite making extensive factual "findings" regarding Plaintiff's corporate structure, the background of the so-called "Principals", the Alan Cooper issue, the methods employed in copyright infringement litigation and Brett Gibbs, the Los Angeles court made only two narrow findings of misconduct. First, the Los Angeles court found that Brett Gibbs made misrepresentations to the court. *Id.* at ECF No. 130, 8:4-12. Second, the Los Angeles court determined that Gibbs ignored the court's order vacating early discovery. *See id.* While the Los Angeles court referenced the "Alan Cooper forgery," it did not find that the Alan Cooper issue constituted a fraud on the court. *See id.* Instead, the Los Angeles court found that the Alan Cooper issue, "smacked of fraud." *Id.*

## LEGAL STANDARD

The proponent of issue preclusion bears the burden of establishing that all of the elements of the doctrine are satisfied. *See, e.g., Taylor v. Sturgell*, 128 S. Ct. 2161, 2180 (2008). Where, as here, issue preclusion takes the form of non-mutual offensive issue

preclusion[4], the doctrine "should be cautiously invoked." *See Grubbs v. United Mine Workers of America*, 723 F. Supp. 123, 127 (W.D. Ark. 1989). Indeed, offensive issue preclusion is the most, "detailed, difficult, and potentially dangerous" form of preclusion. *Jack Faucett Assocs., Inc. v. AT&T Co.*, 744 F.2d 118, 124-25 (D.C. Cir. 1984); *see also Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 248 (3rd Cir. 2006) (offensive issue preclusion "presents a unique potential for unfairness.").

To establish non-mutual offensive issue preclusion, the proponent must first establish: (1) preclusion would not deny "fundamental fairness"; and (2) preclusion would promote "judicial efficiency." *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331-32 (1979); *see also, e.g., Held v. Mitsubishi Aircraft Int'l, Inc.*, 672 F. Supp. 369, 389-90 (D. Minn. 1987) (declining to impose non-mutual offensive issue preclusion because, "applying [issue preclusion] will not result in significant judicial economy."); *S.E.C. v. Monarch Funding Corp.*, 192 F.3d 295, 304 (2d Cir. 1999) ("When the efficiency rationale for [issue preclusion] fails, however, courts have understandably declined to apply the doctrine."); *Gough v. Natural Gas Pipeline Co. of Am.*, 996 F.2d 763 (5th Cir. 1993) ("[E]fficiency is [offensive] [issue preclusion's] only true justification.") (internal quotation omitted).

If the proponent succeeds in establishing the elements unique to non-mutual offensive issue preclusion, it must still establish the standard elements of issue

---

[4] The Magistrate Judge's proposed use of issue preclusion is non-mutual offensive issue preclusion because the investigation into fraud on the court places Plaintiff in a defensive position and because the Magistrate Judge is not bound in any manner by the Los Angeles court's order. *See Held v. Mitsubishi Aircraft Intern., Inc.*, 672 F. Supp. 369, 386 (D. Minn. 1987).

preclusion. These elements are, "(1) the issues are identical; (2) the prior adjudication ended with a final judgment on the merits; (3) the plaintiff was a party to the prior adjudication; and (4) the plaintiff was given a full and fair opportunity to be heard on the adjudicated issue." *See, e.g., Bechtold v. City of Rosemount*, 104 F.3d 1062, 1066–67 (8th Cir. 1997). Finally, issue preclusion may only be applied with respect to findings that are "outcome determinative." *See Bobby v. Bies,* 129 S. Ct. 2145, 2153 (2009); *see also Setter v. AH Robins Co., Inc.*, 748 F.2d 1328, 1331 (8th Cir. 1984); *In re Microsoft Corp. Antitrust Litig.*, 355 F.3d 322, 325 (4th Cir. 2004).

## ARGUMENT

### I.   The Requirements of Fairness and Economy are not Satisfied

#### A.   Decisions in Plaintiff's Favor Make Issue Preclusion Inappropriate

"Offensive [issue preclusion] should not be applied" where the "judgment relied on is inconsistent with other decisions." *Jack Faucett*, 744 F.2d at 125-26 (D.C. Cir. 1983); *see also Parklane Hosiery*, 439 U.S. at 330; *Setter,* 748 F. 2d at 1330 (8th Cir. 1984). Courts have expressed particular reluctance to apply non-mutual offensive preclusion where defendants face numerous proceedings with inconsistent results. *See, e.g., In re Bendectin Prods. Liab. Litig.*, 749 F.2d 300, 305 n. 11 (6th Cir. 1984) (interpreting *Parklane* as holding "that offensive [issue preclusion] could not be used in mass tort litigation").

The same considerations apply here, where the order to show cause seeks to apply issue preclusion against Plaintiff, despite dozens of instances in which the Alan Cooper issue has been raised, and courts nationwide have and declined to act on it. *See, e.g., AF*

*Holdings v. Harris*, No. 2:12-cv-2144-PHX-GMS (D. Az. filed Oct. 9, 2012) (order to show cause issued regarding Plaintiff's assignment, Plaintiff responded with briefing and Mr. Lutz's in-person testimony). The *Harris* case post-dated the Los Angeles court's ruling. *See, id.* Most notably, the court in the *Harris* actually raised Plaintiff's assignment as an issue in an order to show cause, allowed Plaintiff to submit testimony and other evidence in response to the order to show cause, requested clarification on Plaintiff's response to the order to show cause, and held a hearing at which Plaintiff's manager, Mr. Lutz, was allowed to testify and was subject to cross-examination. *Id.*

It would be fundamentally improper to disregard decisions in favor of Plaintiff simply because the Los Angeles court evidently reached different determinations: "[i]t seems most inappropriate for this Court to pick out one case upon which the jury reached a verdict for the plaintiff, and accord it preclusive effect, and at the same time to ignore all the others in which equally competent juries have reached the opposite conclusion." *Harrison v. Celotex Corp.*, 583 F. Supp. 1497, 1503 (E.D. Tenn. 1984).

Finally, it is the duty of the proponent of issue preclusion—not Plaintiff —to affirmatively prove that the prior decisions are *not* inconsistent with the Los Angeles court's order. As the D.C. Circuit has explained, "[it] is enough if that inconsistent determination undermines the court's confidence in the earlier decision." *Jack Faucett*, 744 F.2d at 130.

**B.    Non-Mutual Offensive Issue Preclusion Would not Promote Judicial Economy and Would Greatly Prejudice Plaintiff**

The primary purpose of non-mutual offensive issue preclusion is to promote "judicial economy," and the doctrine is inappropriate where it would not achieve that goal. *Parklane Hosiery*, 439 U.S. at 331-32. *Held*, 672 F. Supp. at 389-90. Courts thus decline to apply offensive non-mutual issue preclusion where the issues that would be encompassed by preclusion overlap with the issues that remain to be decided:

> Whatever values may be gained by nonmutual preclusion are substantially diminished when the need to try related issues requires consideration of much the same evidence as bears on the issue tendered for preclusion. Preclusion has been denied in such circumstances because it would not significantly expedite the second trial.

18A Wright, Miller, & Cooper, *Federal Practice & Procedure* ("Wright & Miller") § 4465 (2009) (collecting cases); *see also* Restatement (Second) of Judgments § 29(c) cmt. h (in such cases "little is gained by way of economy in foreclosing retrial of the issue, because substantial recanvassing of the evidence will in any event be necessary").

In addition to the lack of any efficiency benefits, courts and commentators recognize that it is fundamentally unfair to allow preclusion in circumstances where the findings will tend to distort the consideration of the remaining "open" issues:

> Beyond the lack of time saving, moreover, preclusion on one issue while closely related issues must be tried may substantially distort decision of the issues that remain open. Determinations of comparative fault, for example, may be drastically affected if the evidence must be examined from the authoritative perspective that one party was at fault.

18A Wright & Miller § 4465 (collecting cases); *see also, e.g., Corburn v. Smithkline Beecham Corp.*, 174 F. Supp. 2d 1235, 1241 (D. Utah 2001) ("it is entirely unclear to this court exactly what would be accomplished by granting Plaintiffs' motion, other than causing prejudice to [defendant] and confusion to the jury" on the remaining open issues).

The only findings issued by the Los Angeles district court against Plaintiff were:

- AF Holdings was formed by three attorneys for the sole purpose of litigating copyright-infringement lawsuits. *Ingenuity 13 LLC* at ECF No. 130, 3:25-4:2.

- AF Holdings has no assets other than several copyrights to pornographic movies. There are no official owners or officers for AF Holdings, but the attorneys are AF Holdings' de facto owners and officers. *Id.* at ECF No. 130, 4:5-7.

- No taxes have been paid on AF Holdings' income. *Id.* at ECF No. 130, 4:19-21.

- Alan Cooper is not an officer of AF Holdings and has no affiliation with AF Holdings. There is no other person named Alan Cooper related to AF Holdings. *Id.* at ECF No. 130, 5:12-15.

The Magistrate Judge's June 20, 2013 order (ECF No. 13) and the Magistrate Judge's statements at the August 5, 2013, pretrial conference indicate that the Magistrate Judge's inquiry is whether Plaintiff committed a fraud on the court by submitting a forged copyright assignment. Yet, the Los Angeles court's findings are insufficient for making this determination. The remaining issues to be tried include:

***Identity of the Documents.*** The issue raised by the Magistrate Judge is whether the assignment submitted *in these cases* is a forgery, not whether an assignment

13

submitted in a *different* case was a forgery. This is not a distinction without a meaning. For example, the assignment at issue in certain cases subject to the Magistrate Judge's order is for the copyrighted work, "Sexual Obsession." The sole copyrighted work at issue in the Los Angeles court's order was, "Popular Demand."

Further, nothing in the Los Angles court's order precludes the possibility that multiple versions of the assignment for "Popular Demand" exist. For example, while the Los Angeles court found certain individuals used Mr. Cooper's name without his authorization on the "Popular Demand," assignment the Los Angeles court did *not* find that this was the only version of the Popular Demand assignment in existence or that this particular version was submitted to *that* court, let alone *this* Court.

Finally, the Los Angeles court's findings did not state whether the assignment submitted to *this* Court was identical to the assignment submitted to *that* court.

***Authorization.*** The Los Angeles court did not address whether AF Holdings, the entity, possessed Mr. Cooper's authorization to use his name on its assignments. There can be no forgery where authority is given to sign the name of another to a writing or where the person who does so has the good faith belief as to such authorization. *U.S. v. Peterson,* 808 F.2d 969, 975 (2d Cir. 1987). While the Los Angeles court found that Mr. Cooper did not authorize the so-called "Principals" to place his name on the assignment, it made no such finding with respect to Plaintiff or any agent working on Plaintiff's behalf—including, for example, Brett Gibbs. Further, the Los Angeles court did not make any findings bearing on whether Plaintiff believed or had reasonable grounds to believe that it was authorized to use Mr. Cooper's name. Such a finding, for example, could be

14

"inferred from a failure to repudiate previous, ungranted use of the same name of the same person of [like documents]." *Smith v. Commonwealth*, 282 S.W.2d. 618, 619 (Ky. 1955).

*Intent to Defraud.* The Los Angeles court did not make a finding that Plaintiff possessed the requisite intent to defraud for purposes of forgery. *See State v. Talbot*, 198 A.2d 163, 166 (Me. 1964). It is not sufficient to determine that Plaintiff's use of Mr. Cooper's name was not authorized. *Id.* There must be a finding of an intent to defraud, which must be supported by evidence, that the allegedly forged instrument would cause reliance resulting in the granting of a benefit for which the defendant was not entitled. *Id.* Because the elements of an assignment are a writing that is signed by the assignor (and neither of these elements were disputed by the Los Angeles court), it is unclear on what basis Plaintiff could have formed the requisite intent to defraud. The only purpose Mr. Cooper's signature served was to acknowledge Plaintiff's recognition of the assignment—a recognition that Plaintiff did at the time and continues to acknowledge. Perhaps this is why the Los Angeles court could only state that the Mr. Cooper issue "smacked of fraud", rather than actually constituted fraud.

*Actions of Plaintiff's Counsel of Record.* The Los Angeles court did not make any findings regarding the knowledge, authorization or intent of Plaintiff's counsel of record. Mr. Dugas, for example, was never a respondent to any of the Los Angeles proceedings, was not sanctioned in the Los Angeles proceedings, and otherwise had no relationship to the Los Angeles proceedings. All of the issues that were raised in the Magistrate Judge's various orders issued in these proceedings will have to be fully

15

relitigated with respect to Mr. Dugas, thus ensuring complete overlap between the findings in the Los Angeles court's order and the issues at stake in this action.

## II.   The Standard Requirements of Issue Preclusion are not Satisfied

### A.   The Los Angeles Court's Findings are not Identical to the Issues in These Cases

Issue preclusion is inappropriate in this case because the Los Angeles court's findings are not "identical *in all respects*" to the issues in this case. *Faigin v. Kelly*, 184 F.3d 67, 78 (1st Cir. 1999) (emphasis added) (citation omitted). For this element to be satisfied, "the facts and the legal standard used to asses them" must be "the same in both proceedings." *In re Southmark Corp.*, 163 F.3d 925, 932 (5th Cir. 1999). "It is not sufficient that an issue is 'factually similar' to the one in an earlier case … the issue must be *identical* and involve the same facts and surrounding context." *Visa U.S.A. Inc. v. First Data Corp.*, 369 F. Supp. 2d 1121, 1123 (N.D. Cal. 2005) (emphasis in original) (citation omitted). This showing cannot be made for at least three reasons.

### 1.   The Los Angeles Court's Findings Were Made Against the so-Called "Principals", not Plaintiff

In relevant part, the Los Angeles court's findings were made against attorney Brett Gibbs and others who he claimed were managing him, not Plaintiff or its counsel of record in this case. The Magistrate Judge's June 20, 2013, order (ECF No. 13) focused on *Plaintiff's* conduct and the conduct of its counsel of record in *this* case, not the alleged conduct of other individuals in a case pending in Los Angeles, California. Further, in at least two of the cases subject to the Magistrate Judge's June 20, 2013, order the assignment document was for an entirely different copyrighted work: "Sexual Obsession"

16

versus "Popular Demand." "It is not sufficient that an issue is 'factually similar' to the one in an earlier case … the issue must be *identical* and involve the same facts and surrounding context." *Visa U.S.A. Inc.*, 369 F. Supp. 2d at 1123 (N.D. Cal. 2005).

### 2. The Los Angeles Court's Findings are not Relevant to the Issues in This Case

Many of the Los Angeles Court's findings are not only *different* from those in the present case, but entirely *irrelevant* to the issues in these cases. This is another reason why issue preclusion is inappropriate, because a court may only give preclusive effect to findings that are relevant to the issues in the subsequent litigation. *See, e.g., Jack Faucett*, 744 F.2d at 132.

On their face, virtually all of the findings referenced in the Magistrate Judge's order to show cause are irrelevant to the issue he has identified—namely, whether the assignments attached to the complaints in the underlying cases were forged. For example:

- The Principals started their copyright-enforcement crusade in about 2010, through Prenda Law.

- Their litigation strategy consisted of monitoring BitTorrent download activity of their copyrighted pornographic movies, recording IP addresses of the computers downloading the movies, filing suit in federal court to subpoena Internet Service Providers ("ISPs") for the identity of the subscribers to these IP addresses, and sending cease-and-desist letters to the subscribers, offering to settle each copyright infringement claim for about $4,000.

- No taxes have been paid on this income.

No one has made any effort to explain how each of these findings is relevant to an issue in this case, let alone identical. It is not Plaintiff's responsibility to ferret out potentially relevant findings.

17

**B.** **The Los Angeles Court's Findings did not Arise from a Final Judgment on the Merits**

The proponent of issue preclusion bears the burden of establishing that the findings sought to be imposed arose from a final judgment on the merits. *Bechtold,* 104 F.3d 1062 at 1066–67. Yet, "[l]ike the imposition of costs, attorney's fees, and contempt sanctions, the imposition of a Rule 11 sanction is not a judgment on the merits of an action." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990). The Los Angeles court's order arose from a series of post-dismissal Rule 11 show cause hearings that were collateral to the underlying actions. Here, the instant actions constitute reopened actions on the merits. Further, even if there was a final judgment, courts caution that "care should be take in dealing with judgments that are final but still subject to direct review." *Martin v. Malhoyt*, 830 F.2d 237, 264 (D.C. Cir. 1987). Here, the Los Angeles order is currently the subject of eight now-consolidated appeals.

**C.** **Plaintiff was not a Party to the Alan Cooper Adjudication**

The proponent of issue preclusion bears the burden of establishing that Plaintiff was a party to the prior adjudication. *Bechtold,* 104 F.3d 1062 at 1066–67. The Los Angeles court's findings were made with respect to two distinct proceedings. The first proceeding was an order to show cause issued against Brett Gibbs, and no one else. *See Ingenuity 13* at ECF No. 48. The second proceeding was an order to show cause issued against Plaintiff and twelve other persons. *See id.* at ECF No. 86. The Los Angeles court's findings were contained in a single order that did not specify at which adjudication they were decided. There is no way for anyone to decisively determine

18

whether the Los Angeles court's Alan Cooper findings arose from first  adjudication or the second adjudication. The record of the Los Angeles proceedings suggests that the Alan Cooper findings arose from the first adjudication, to which Plaintiff was not a party:

> THE COURT:          Well, that isn't exactly accurate, is it? You have caused documents to be filed with, let's just be kind and say falsified signatures.
>
> [MR. GIBBS]:        Your Honor, I think it is still an open question.
>
> THE COURT:          Oh No. It is not an open question. We have had the individual testify under oath. Those were not his signatures on these documents.

*Id.* at ECF No. 93, 95:2-12.

### D.    Plaintiff was Not Given Any Opportunity to be Heard on any Adjudicated Issue, Much Less a "Full and Fair Opportunity"

The proponent of issue preclusion bears the burden of establishing that Plaintiff had a full and fair opportunity to be heard on the issue. *Bechtold,* 104 F.3d 1062 at 1066–67. Although are at least dozens of independently sufficient reasons why the Los Angeles proceedings did not constitute a full and fair opportunity to be heard on the "adjudicated" issues, for the sake of judicial economy Plaintiff will highlight three obvious failings:

### 1.    Plaintiff's Assignments Were Never the Subject of an Order to Show Cause

The only Alan Cooper issue subject to any show cause order was: "In *Ingenuity 13 LLC v. Doe*, No. 2:12:-cv-8333-ODW(JCx) (C.D. Cal. filed Sept. 27, 2012), perpetrating fraud on the Court by misappropriating the identity of Alan Cooper and filing lawsuits based on an invalid copyright assignment." *Ingenuity 13 LLC v. Doe*, No. 2:12-cv-8333, ECF No. 48 at 10 (C.D. Cal. Feb. 7, 2013). Plaintiff's assignments were never the subject

of an order to show cause. As such, Plaintiff was not on notice that it had to defend its assignments before the Los Angeles court. The Los Angeles court's failure to abide by the most basic tenant of due process renders the proceedings inadequate. *See Carey v. Piphus*, 435 U.S. 247, 266 (1978) ("[T]he right to procedural due process is 'absolute' in the sense that it does not depend upon the merits of a claimant's substantive assertions").

### 2. Plaintiff was Never Given an Opportunity to Cross-Examine Witnesses

Plaintiff was never given an opportunity to cross-examine witnesses, and in particular Alan Cooper. Had Plaintiff been allowed to cross-examine Mr. Cooper, it could have learned, for example: (1) what was the nature of Cooper's recruitment via text message by attorney Godfread's cohorts; (2) did attorney Godfread threaten Cooper with harm if he did not turn on Mr. Steele (3) what was Mr. Cooper promised or given in exchange for his repudiation; (4) how does Mr. Cooper explain the observations of people who saw him bragging about his "porn companies"; (5) what was the nature of Mr. Cooper's mental illness that caused him to alienate himself from his friends in Northern Minnesota; (6) why did Mr. Cooper wait over 1.5 years to repudiate his corporate representative status; (7) why did Mr. Cooper threaten Mr. Steele, damage Mr. Steele's property, and steal Mr. Steele's property so shortly before attorney Godfread filed his letter; and (8) why did Mr. Cooper's repudiation occur on the eve of his eviction from Mr. Steele's property? There are obviously many unanswered questions with respect to Alan Cooper's repudiation that Plaintiff could have resolved if it had been given a full and fair opportunity to litigate the Alan Cooper issue.

### 3.    Plaintiff was not Allowed to Present Evidence

The only show cause hearing to which Plaintiff was made a party was the April 2, 2013 hearing. Yet, that hearing lasted an estimated twelve minutes and Plaintiff was not allowed to present *any* evidence in its defense, was not allowed to call witnesses and was not allowed to examine witnesses who were present. *See, Ingenuity 13 LLC,* at ECF No. 103. Instead, the Los Angeles court called three witnesses, learned they would not testify before the court and then abruptly ended the hearing. Literally no evidence was presented at that hearing. The next thing Plaintiff knew, the Los Angeles court issued an order issuing sanctions, in which the findings totally distorted virtually every aspect of Plaintiff's business, corporate structure and conduct with respect to the Alan Cooper issue. Suffice it to say, the Los Angeles court's refusal to permit Plaintiff to introduce evidence prevented Plaintiff from having a full and fair opportunity to adjudicate the Los Angeles proceedings.

### E.    The Los Angeles Court's Findings Were not Necessary to the Order Issuing Sanctions

Issue preclusion is inappropriate for the independent reason that the Los Angeles Court's findings for which the Magistrate Judge is seeking preclusive effect were not "*necessary* to [the] court's judgment." *United States v. Alaska*, 521 U.S. 1, 13 (1997) (emphasis added); *see also Setter*, 748 F.2d at 1331 ("[Issue preclusion] applies only to issues of fact or law necessarily decided."); *S.E.C. v. Ridenour*, 913 F.2d 515, 518 (8th Cir. 1990) ("The doctrine of [issue preclusion] applies only when … the issues was essential to a valid and final judgment."). The Magistrate Judge's order to show cause

recited virtually all of the Los Angeles court's findings. However, it is not plausible that all of the Los Angeles court's findings "can be important enough to be set in stone forever." *Gordon v. Microsoft Corp.*, 2003 WL 22281574, at *7 (Minn. Dist. Ct. 2003). Indeed, many of the findings on their face are only "subsidiary" and not "outcome determinative." For instance, the Magistrate Judge's order to show cause would give preclusive effect to the Los Angeles Court's finding no. 3, which reads:

> Steele, Hansmeier, and Duffy are attorneys with shattered law
> practices.

*Ingenuity 13* at ECF No. 130, 3:24-25. No one can seriously contend that the Los Angeles court could not have reached the same conclusions without this finding (or the many others like it). *See, e.g., Comes v. Microsoft Corp.*, 709 N.W.2d 114, 120 (Iowa 2006).

Courts have repeatedly denied requests to apply issue preclusion in such circumstances. For example, in *Pool Water Prods. v. Olin Corp.*, 258 F.3d 1024 (9th Cir. 2001), plaintiffs sought a blanket preclusion order for 895 findings of fact and six conclusions of law without demonstrating how each finding was necessary to the judgment. *Id.* at 1032-33. The Ninth Circuit affirmed the district court's rejection of issue preclusion based on this failure of proof. *Id.* at 1033. Although the court acknowledged that some of the findings may have been necessary, the court explained that "[i]t is up to the party seeking" prelusion to "establish that it has met the requirements" and thus "[n]either the district court not the defendant is required to engage in a 'hunt and peck' exercise to ferret out potentially relevant and necessary findings." *Id.* Here, Plaintiff is being asked to engage in such an impermissive "hunt and peck" exercise to determine

which of the Los Angeles court's findings were outcome determinative. This is reason enough to find in Plaintiff's favor.

Further, *none* of the Los Angeles court's findings were necessary to its order issuing sanctions. The only actual findings of misconduct the Los Angeles court made were: (1) Mr. Gibbs's misrepresentations in his response to the first order to show cause (which he filed through independent counsel); and (2) the ignored Court Order vacating early discovery. *Ingenuity13* at ECF No. 130, 8:9-11. While the Los Angeles court discussed the Alan Cooper issue, it only found that the issue "smacked of fraud," not that it constituted actual fraud. *Id.* Beyond this, the Court found that it "unfortunately" could not "make more detailed findings of fraud." *Id.* None of the Los Angeles district court's findings had any relation to Mr. Gibbs' misrepresentations or Mr. Gibbs' compliance with the Court's discovery orders. As such, none of the Los Angeles court's findings are eligible for issue preclusion in this case.

### III.   Other Barriers to Issue Preclusion

#### A.   The Order to Show Cause Does Not Establish a *Prima Facie* Case in Favor of Issue Preclusion

"[Issue preclusion], is an affirmative defense." *Taylor,* 128 S. Ct. 2161 at 2179 (2008); *see also* Fed. R. Civ. P. 8(c). "Ordinarily, it is incumbent on the defendant to plead and prove such a defense, and we have never recognized claim preclusion as an exception to that general rule." *Taylor*, 128 S. Ct. at 2180. In this action, no defendant has raised issue preclusion as an affirmative defense. Nor does the order to show cause— even if left unanswered—carry the burden of proof of establishing the elements of issue

preclusion. (*See* ECF No. 34) (reciting certain findings of fact, summarizing the order to show cause process, but not making a finding-by-finding case for the imposition of non-mutual offensive issue preclusion.).

Given the lack of a finding-by-finding showing of why issue preclusion should apply, Plaintiff reserves the right to demonstrate that any particular finding cannot be subject to issues preclusion in the event the Court concludes that some preclusive effect should be given to the Los Angeles court's findings. Further, Plaintiff reserves the right to object to particular findings as irrelevant based on subsequent developments in these proceedings. *See, e.g., In re Microsoft Corp. Antitrsut Litig.*, 232 F. Supp. 2d 534, 535 n.2 (D. Md. 2002) ("By finding that preclusive effective is to be given to the factual findings in the government case, I am not deciding that these findings are relevant to the claims of any particular plaintiff. This is an issue (more accurately, a series of issues) that awaits decision on a later occasion."), *rev'd on other grounds*, 355 F.3d 322 (4th Cir. 2004).

**B.    New Evidence That Has Emerged Since the April 2, 2013, Order to Show Cause Undermines Confidence in the Los Angeles Court's Findings**

"[C]hanges in fact essential to a judgment will render [issue preclusion] inapplicable in a subsequent action raising the same issues." *Montana v. U.S.*, 440 U.S. 147, 159 (1979). In such circumstances, offensive issue preclusion would deny the respondent "a complete and fair opportunity to litigate." *Vincent v. Thompson*, 50 A.D.2d 211, 221 (N.J. App. Div. 1975). "[C]onfidence in the correctness of the earlier

determination is fundamental to the principles of [issue preclusion]." *Rogers v. Ford Motor Co.,* 925 F. Supp. 1413, 1419 (N.D. Ind. 1996).

Substantial new evidence has emerged since the order to show cause hearing. As some background, Plaintiff was given a mere eleven business day's notice for the April 2, 2013 order to show cause hearing. *See Ingenuity 13 LLC,* at ECF 86, 3:10–13. While Plaintiff managed to gather some evidence in that brief window, it has gathered substantially more since then. For example, Plaintiff has secured the testimony of attorney John Steele, in which Mr. Steele testified about his long-standing friendship with Mr. Cooper, his efforts to help Mr. Cooper gain a foothold in the adult industry, his introduction of Mr. Cooper to Mr. Lutz, Plaintiff's manager, and Mr. Cooper's descent into mental illness and substance abuse. *See Steele Affidavit,* attached hereto as Exhibit A.

Plaintiff also secured testimony from its manager, Mr. Lutz, who described Plaintiff's business and its corporate structure. *See Lutz Affidavit,* attached hereto as Exhibit B. In addition, Plaintiff gained the testimony of Jason Flesher, a veteran of the U.S. Marines who was honorably discharged after serving in Operation Iraqi Freedom, who heard Mr. Cooper discussing the documents he was signing, as well as his adult industry ventures. *See Flesher Affidavit,* attached hereto as Exhibit C. Further, Plaintiff secured the testimony of attorneys Steven Goodhue and Jacques Nazire, both of whom confirmed that Brett Gibbs was Plaintiff's national counsel—a fact Plaintiff has known all along. *See* Nazire Affidavit, attached hereto as Exhibit D; *Goodhue Affidavit,* attached hereto as Exhibit E.

Finally, Plaintiff has become aware of other instances of subordination of perjury by attorney Godfread and his cohorts. For example, one of Mr. Lutz's peers was targeted by attorney Godfread's cohorts in much the same manner that Plaintiff believes Mr. Cooper was. Another example is with respect to Plaintiff's former national counsel, Brett Gibbs, who has literally changed his testimony 180-degrees after being threatened and bribed. *Compare* Gibbs December, 2012, Affidavit, attached hereto as Exhibit F *with* Gibbs May, 2013, Affidavit, attached hereto as Exhibit G.

Finally, Plaintiff has evidence that it was not allowed to submit at the April 2, 2013, show cause hearing, including: (1) the assignor's affidavit, verifying his signature, Rogers Affidavit, attached hereto as Exhibit H; and (2) testimony from Mr. Cooper's close friend, Brent Berry, who heard Cooper talking about his "porn companies" and was chased off of Steele's property by a deranged, gun-wielding Cooper shortly before Cooper's repudiation. Berry Affidavit, attached hereto as Exhibit I.

The sum total of this evidence is that it greatly undermines the credibility of Mr. Cooper's repudiation and provides information regarding the tactics of the individuals who procured it. This is not a circumstance where the evidence is settled and issue preclusion is appropriate.

## **CONCLUSION**

For all of the reasons set forth above, the Magistrate Judge should decline to non-mutual offensive issue preclusion against Plaintiff with respect to any of the Los Angeles court's findings.

26

Respectfully submitted,

DATED: August 26, 2013

/s/ Paul R. Hansmeier
Paul R. Hansmeier (MN Bar # 387795)
CLASS JUSTICE PLLC
100 South Fifth Street, Suite 1900
Minneapolis, MN 55402
E-mail: mail@classjustice.org
Phone: (612) 234-5744

27