**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| AF HOLDINGS LLC,<br>*Plaintiff*,<br>v.<br>JOHN DOE<br>*Defendant*. | CASE NO. 12-CV-1449 (JNE/FLN) |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO DISQUALIFY THE MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 455(a), Plaintiff AF Holdings, LLC respectfully moves to disqualify the Magistrate Judge from this proceeding.

## ARGUMENT

### I. LEGAL STANDARD

Section 455(a) requires a judge to "disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). "The goal of section 455(a) is to avoid even the appearance of partiality," *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 860 (1998) (quotation marks omitted), and thus "what matters is not the reality of bias or prejudice but its appearance," *Liteky v. United States*, 510 U.S. 540, 548 (1994). In other words, so long as a judge's impartiality might reasonably be questioned, recusal is required "even though no actual partiality exists … because the judge actually has no interest in the case or because the judge is pure in heart and incorruptible." *Liljeberg*, 486 U.S. at 860 (quotation marks omitted).

The standard for assessing whether 455(a) requires disqualification is thus an "objective one" that "involves ascertaining" whether "the judge's impartiality might reasonably be questioned by the average person on the street who knows all the relevant facts of a case." *In re Kan. Pub. Employees Ret. Sys.*, 85 F.3d 1353, 1360 (8th Cir. 1996). In performing this analysis, the Court must "bear in mind that … outside observers are less inclined to credit judges' impartiality and mental discipline than the judiciary itself will be." *In re Nettles*, 394 F.3d 1001, 1002 (7th Cir. 2005). If it is a close case, the balances tips in favor of recusal. *United States v. Dandy*, 998 F.2d 1344, 1349 (6th Cir. 1993).

The Code of Conduct for United States Judges prescribes ethical norms for federal judges in order to preserve the actual and apparent integrity of the federal judiciary. Canon 3A(6) forbids federal judges to comment publicly "on the merits of a matter pending or impending in any court." CODE OF CONDUCT Canon 3A(6). An action remains "pending" until "completion of the appellate process." *Id.* at cmt. "If the public comment involves a case from the judge's own court, the judge should take particular care so that the comment does not denigrate public confidence in the judiciary's integrity and impartiality, which would violate Canon 2A." *Id.* Finally, "a judge should not initiate, permit or consider ex parte communications or consider other communications concerning a pending or impending matter that are made outside the presence of the parties or their lawyers."*Id.* Canon 3A(4).

## II. FACTUAL BACKGROUND

### A. October 11, 2013, E-Mail

In an October 11, 2013, e-mail, the Student Federal Bar Association of the University of Minnesota Law School stated that the Magistrate Judge was planning to deliver a presentation at its October 23, 2013 public luncheon on the topics of "copyright trolls" and "some recent cases on that issue, which have come up before him and have generated some notoriety due to bad behavior of the plaintiff's lawyers (recent University of Minnesota Law School graduates)." (*See* Exhibit A.) The cases referred to in the e-mail[1], including this one, are currently pending. Indeed, at the time of the e-mail there were hearings scheduled in these cases on October 21, 2013, November 12, 2013, and November 13, 2013. The attorneys referenced in this e-mail include the undersigned.

### B. October 14, 2013, E-Mail

A subsequent October 14, 2013, e-mail contained a detailed agenda of Magistrate Judge's intended presentation:

> Magistrate Judge Noel will discuss the genesis of copyright litigation arising out of the bit torrent [sic] technology. He will then move into specific examples of the cases which he has been involved in, where the plaintiff buys up the copyright to pornographic content. Then these principles [sic] learn the IP address [sic] of computers which accessed the content, sue the individual, and use the Federal Rules of Civil Procedure to subpoena the local ISP's [sic] to learn the

---

[1] *AF Holdings LLC v. John Doe*, 12-cv-1445 (D. Minn. filed on June 15, 2012); AF *Holdings LLC v. John Doe*, 12-cv-1446 (D. Minn. June 15, 2013); *AF Holdings LLC v. John Doe*, 12-cv-1447 (D. Minn. June 15, 2013); *AF Holdings LLC v. John Doe*, 12-cv-1448 (D. Minn. June 15, 2013); *AF Holdings LLC v. John Doe*, 12-cv-1449 (D. Minn. filed on June 15, 2013). Plaintiff's docket cites in this memorandum are keyed to the filings in Case No. 12-cv-1445.

> identity of the individual who has accessed the material. Upon learning the identity of this person, the lawyers send a letter offering to settle the litigation for a sum of money between $3,000 and $5,000. Most of the individuals are more than willing to pay $3,000-$5,000 to avoid public exposure. The individuals believed to be behind this scheme are graduates of the University of Minnesota Law School. Please join the FBA and Magistrate Judge Noel for a discussion on this legal phenomenon, enjoy some free pizza, and observe a few cautionary tales along the way.

(*See* Exhibit B.)

**C. The Magistrate Judge's October 23, 2013, Presentation**

The Magistrate Judge's October 23, 2013, presentation was consistent with the agenda contained in the foregoing e-mails.[2] His talk began with an overview of intellectual property enforcement, and then proceeded to a discussion of BitTorrent technology, a comparison and contrast of intellectual property enforcement methods, an overview of this case, and a question and answer session. In his talk, the Magistrate Judge described Plaintiff's methods of enforcing its copyrights as illegitimate because, *inter alia*, it purchased copyrights it was suing over instead of producing the content. The Magistrate Judge further discussed the settlements obtained by the Plaintiff in this case and endorsed the view that Plaintiff calculated its settlements to be high enough to be profitable, but low enough so that the defendants would not put up a fight. He also discussed the undersigned counsel and third-party attorney John Steele, and suggested

[2] Plaintiff is securing a transcript of the audio recording of the Magistrate Judge's October 23, 2013, presentation and will supplement the record with the transcript at the Court's instruction. Due to the prejudicial nature of certain of the Magistrate Judge's statements as they relate to currently pending cases in this district and in other districts, Plaintiff will seek leave to file the transcript under seal.

that they were "principals." The Magistrate Judge also summarized his take on the testimony of Mr. Steele and an Alan Cooper at a recent hearing as it relates to their relationship. At the end of his talk, the Magistrate Judge indicated that Mr. Steele was a frequent topic of conversation on blogs created by the infringers.

### D. Disclosure Of The Speaking Engagement

Plaintiff's counsel learned of the Magistrate Judge's speaking engagement through happenstance. The existence of the event has never been disclosed to any of the parties. Nor have any of the circumstances surrounding the Magistrate Judge's decision to speak at the event been disclosed. Plaintiff does not know if the October 23, 2013, speaking engagement was the only presentation or interview that the Magistrate Judge has given about this case, or whether additional *ex parte* communications about this case have occurred.

## III. THE APPEARANCE OF PARTIALITY MANDATES RECUSAL

### A. The October 11, 2013, E-Mail

The October 11 e-mail creates an appearance of partiality. The e-mail states the Magistrate Judge will be speaking about "some recent cases … which have come up before him and have generated some notoriety due to bad behavior of the plaintiff's lawyers…." Yet, this case was reopened to *determine* whether such so-labeled "bad behavior" occurred. (*See, e.g.*, ECF No. 13 at 8.) The Magistrate Judge's association with this description of the case creates an appearance of prejudgment, and thus partiality. The e-mail's description of Plaintiff and its counsel as "copyright trolls"—a pejorative commonly invoked by infringers to describe copyright holder plaintiffs and their

counsel—exacerbates this appearance. Even if the Magistrate Judge did not approve of the content of the e-mail, his name is nevertheless associated with it.

**B. The October 14, 2013, E-Mail**

The October 14, 2013 e-mail also creates an appearance of partiality. The description of the Magistrate Judge's talk suggests that: (1) the Magistrate Judge considers copyright enforcement cases to be a "scheme"; and (2) the Magistrate Judge believes that the defendant's motive for settling was to "avoid public exposure" rather than to avoid an adverse decision on the merits. The e-mail further discloses information about the settlement demands in this case. Yet, Plaintiff's settlement demands were filed under seal by order of the district court. The e-mail's author appears to be in possession of non-public sealed information, which a reasonable person might conclude was furnished by the Magistrate Judge, even if it was not. Describing this case as a "scheme", concluding that persons settled because of fear rather than guilt, and providing information from sealed documents all create an appearance of partiality. Again, this is true even if the Magistrate Judge did not approve of the content of the e-mail.

**C. The October 23, 2013 Presentation**

The very act of agreeing to deliver a presentation about a currently pending matter creates an appearance of partiality. William G. Ross, *Extrajudicial Speech: Charting the Boundaries of Propriety*, 2 GEO. J. LEGAL ETHICS 589, 598 (1989). As the Tenth Circuit noted:

> Two messages were conveyed by the judge's appearance…. One message consisted of the words actually spoken …. The other was the judge's expressive conduct in deliberately

> making the choice to appear in such a forum at a sensitive time to deliver strong views on matters which were likely to be ongoing before him…. It was an unusual thing for the judge to do, and it unavoidably created the appearance that the judge had become an active participant in bringing law and order to bear on the protesters, rather than remaining as a detached adjudicator.

*United States v. Cooley*, 1 F.3d 985 (10th Cir. 1993). Here, the Magistrate Judge's decision to publicly discuss a case that is currently pending "unavoidably create[s] the appearance that the judge has become an active participant in bringing law and order to bear on the [Plaintiff], rather than remaining as a detached adjudicator." *Id.* "Whenever such an occurrence arises, a judge should recuse himself to protect the sanctity of the judicial process [regardless of] whether the judge *intends* to act with bias or otherwise prejudice the defendant." *In re Barry*, 94 F.2d 913, 917 (D.C. Cir. 1991) (per curiam) (Edwards, J., dissenting) (emphasis in original).

Further, the Magistrate Judge's actual statements at the presentation created an appearance of partiality. He spent a meaningful portion of his talk comparing and contrasting copyright enforcement methods. He described Plaintiff as a, "copyright troll wearing a black hat." He indicated that copyright enforcement was not legitimate if the Plaintiff did not originally produce the copyrighted file. He described Plaintiff as a company that was just trying to make money versus stopping the infringement of its work. Many of his comments echoed criticisms contained on blogs[3] created by

---

[3] The blogs referenced by the Magistrate Judge are alleged to be operated by attorney Paul Godfread, who uses the blogs to promote his clients' agenda and advertise for new business. *See Duffy v. Godfread et al*, Case No. 1:13-cv-1569 (N.D. Ill. filed on Feb. 28, 2013). To the extent that the Magistrate Judge is reading these blogs, he is essentially

individuals who have been caught infringing, and the Magistrate Judge's closing comment of his talk made clear that he was familiar with pirate blogs.

He referred to Plaintiff's copyright enforcement efforts as "this type of litigation", stated that he was not aware of any initiatives to address "this type of thing" or type of problem. He further presented Judge Wright's findings as if he had adopted them himself, notwithstanding that a motion on issue preclusion with respect to those findings is currently pending. Finally, the Magistrate Judge summarized his view of the facts surrounding the relationship between Alan Cooper and John Steele, another issue—and perhaps the core issue—that is currently pending before the Court. Finally, he discussed the content of sealed communications, namely the settlement amounts sought by the Plaintiff in these cases.

These statements mandate disqualification. *See In re Boston's Children First*, 244 F.3d 164 (1st Cir. 2001) (holding that judge's comments about currently pending case mandated disqualification); *Hathcock v. Navistar International Transportation Corp.*, 53 F.3d 36, 41 (4th Cir. 1995) (reversing refusal to disqualify a judge who delivered a presentation at an auto torts seminar that expressed hostility toward defendants and defense counsel in automobile cases when one such case was pending before him); *In re IBM Corp.*, 45 F.3d 641 (2d Cir. 1995) (disqualifying judge who publicly criticized one of the parties before him); *United States v. Cooley*, 1 F.3d 985 (10th Cir. 1993) (disqualifying judge who criticized a party that was likely to appear before him).

---

entertaining off-the-record *ex parte* communications from an attorney with motions currently pending before the court.

The Magistrate Judge's comments gave rise to the appearance that he considered Plaintiff's lawful copyright enforcement methods to be a "problem" that needs solving, thus "unavoidably creating the appearance that the judge has become an active participant in bringing law and order to bear on the [Plaintiff], rather than remaining as a detached adjudicator." *Id.*

**D. Non-Disclosure**

Plaintiff learned about the speaking engagement through happenstance rather than disclosure. This is a further factor giving rise to an appearance of partiality. *See United States v. Microsoft Corp.*, 253 F.3d 34, 112 (D.C. Cir. 2001) (holding that district judge's "concealment of … interviews suggests knowledge of their impropriety" and "prevented the parties from nipping [the] improprieties in the bud"). Further, none of the facts and circumstances surrounding the Magistrate Judge's decision to discuss this case in a public forum have been disclosed. An objective observer might reasonably infer partiality from the lack of disclosure surrounding the Magistrate Judge's speaking engagement(s) regarding this case.

**E. Context From The Record**

Ordinarily, the circumstances suggesting or creating the appearance of partiality cannot reasonably be derived from information revealed in the normal course of litigation. *See Liteky v. United States*, 510 U.S. 540, 550-51 (1994). However, this is not an absolute rule. *Id.* at 551.

The copyright infringement cases subject to this disqualification motion were filed in June 2012, After the cases were filed, Plaintiff filed a motion to seek discovery of the Doe Defendants' identifying information, which was denied on the grounds that:

> the requested discovery was not very likely to reveal the identity of the alleged infringer; (2) personal jurisdiction may not exist over the alleged infringer; and (3) the pornographic copyright holder's activities in pursuit of settlement agreements may constitute an 'abuse of the judicial system.

(*See* ECF No. 8.) Plaintiff objected to the denial, and the district court sustained Plaintiff's objections, thus granting Plaintiff leave to serve discovery that was necessary to identify the names of the alleged infringers. (*See* ECF No. 10.) Plaintiff proceeded to serve this discovery and learned the names of the infringers. Three of the infringers retained counsel and elected to settle. One infringer refused to settle, and was named and served with a complaint, but ultimately settled. Plaintiff was unable to identify the infringer in the final instance. Each of these cases was ultimately dismissed pursuant to Rule 41(a)(1) in late-2012.[4]

Nearly six months later, on June 20, 2013, the Magistrate Judge *sua sponte* reopened the cases. (*See* ECF No. 13.)[5] The Magistrate Judge's stated reason for doing so was to investigate the possibility of a fraud on the court. The Magistrate Judge's concern appears to have arisen primarily from an order issued from the Central District of

[4] The last dismissal occurred in case no. 12-cv-1449 in February, 2013.

[5] The docket cites in this memorandum are keyed to the filings in case no. 12-cv-1445.

California. (*See id.*)[6] Yet, this order was not brought to the Magistrate Judge's attention by a party to the case. Nor was it a part of the record at the time the cases were reopened.

The Magistrate Judge ordered service of his order on the Defendants. (*See id.*) When none of the Defendants acted on the order, the Magistrate Judge issued a July 16, 2013, order scheduling a pretrial conference, and ordered the attendance of the Doe Defendants, Plaintiff, an officer of Prenda Law, Inc.[7] and Plaintiff's manger, who resides in Miami Beach, Florida. (*See* ECF No. 15.) At the pretrial conferences, the Magistrate Judge reiterated his concerns with the Central District of California order and indicated that he would consider the fraud on the court issue resolved if the Plaintiff remitted any settlements it obtained in this matter to the Defendants.

After careful consideration, both Plaintiff and the Defendants declined to undo the settlements and relitigate the entire matter. (*See* ECF Nos. 30, 33.) Yet, since then, the Magistrate Judge has *sua sponte* ordered Plaintiff to brief the issue of collateral estoppel, perform a Rule 901(a) authentication of a document that it has not sought to submit into evidence and to defend against a motion to intervene from a third-party. Despite the fact that the parties to the case were done with the case, the cases remain open to the present day. Plaintiff's motion to dismiss the action for lack of subject matter jurisdiction is scheduled to be heard on November 13, 2013.

---

[6] The Magistrate Judge also cited to a letter filed by Paul Godfread in 12-cv-1449.

[7] Prenda Law, Inc. was not counsel of record in this action, but settlement payments were paid to the Plaintiff's trust account at Prenda Law, Inc.. The sole officer of Prenda Law, Inc. resides in Chicago, Illinois, and appeared via telephone.

The record supports an inference of bias for three separate reasons. First, the Magistrate Judge's original denial of Plaintiff's discovery appears to have injected content bias into a content neutral law, the Copyright Act. Second, continuing a lawsuit that the parties have sought to end also supports a finding of partiality. *See, e.g., In re IBM Corp.*, 45 F.3d at 643 (2d. Cir. 1995). Third, the source of the Magistrate Judge's concerns—copyright assignments attached to the complaints filed in these cases—goes to a matter that is moot. "[W]here there is no dispute between the copyright owner and the transferee about the status of the copyright, 'it would be unusual and unwarranted to permit a third-party infringer to invoke section 204(a) to avoid a suit for copyright infringement." *Malibu Media, LLC v. Reynolds*, Case No. 12-cv-6672 (N.D. Ill. Mar. 7, 2013, ECF No. 51) (citing *Billy-Bob Teeth v. Novelty, Inc.*, 329 F.3d 586, 592-93 (7th Cir. 2003) (quoting *Imperial Residential Design, Inc. v. Palms Development Group, Inc.*, 70 F.3d 96, 99 (11th Cir. 1995)). Where, as here, Plaintiff's assignments were presented to the Court for the sole purpose of demonstrating property transfer, the assignments satisfy the formal requirements of the Copyright Act, and neither party to the assignment disputes its validity, any fraud on the court issue is moot. A court's decision to proceed in the absence of "colorable jurisdiction" supports a finding of partiality. *In re IBM Corp.*, 45 F.3d at 643.

**F. The Code Of Conduct For United States Judges**

The Canons are unavoidably implicated by the Magistrate Judge's association with and participation in the October 23, 2013, event. For example, despite the fact that this case is still pending, the Magistrate Judge delivered a public presentation about this case

and cases like it. Further, any discussion of this case outside of the presence of the parties would arguably constitute impermissible *ex parte* communications. Regardless of whether the Magistrate Judge's actions were within the boundaries of the Code of Judicial Conduct, even a possible breach of the Canons "will almost always give rise to a legitimate claim for disqualification under section 455(a)." *In re Barry*, 94 F.2d at 917 (Edwards, J. dissenting).

**G. Notoriety**

The October 11, 2013, e-mail stated that these cases have generated some "notoriety." That is an understatement. The Magistrate Judge's reopening of these cases was reported in the Minneapolis Star Tribune. The September 30, 2013, hearing was live-blogged. The letter submitted to the Magistrate Judge by the undersigned on October 20, 2013, was the subject of an immediate feature story on several pirate websites. The intense interest in these cases within the pirate community, the legal community and the public at large means that the issues raised in this memorandum will be considered widely.

## CONCLUSION

Section 455(a) of the Judicial Code requires judges to recuse themselves when their "impartiality might reasonably be questioned." The Magistrate Judge's association —involuntary or otherwise—with the content of the October 11, and October 14 e-mails, his statements at the October 23 presentation, and the remaining factors discussed in this memorandum, taken together, mandate recusal.

Respectfully submitted,

DATED: October 24, 2013

s/ Paul Hansmeier
Paul Hansmeier
Bar Number 387795
Attorney for Plaintiff AF Holdings LLC
Class Justice PLLC
100 South Fifth Street, Suite 1900
Minneapolis, MN 55402
Telephone: (612) 234-5744
mail@classjustice.org